IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| BOSCO A. KANTE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| MCCURDY & CANDLER LLC, U.S. | : | NO. 1:10-CV-1972-JEC-ECS |
| BANK NATIONAL ASSOCIATION as | : | |
| Trustee for the Certificate | : | |
| Holders of Banc of America | : | |
| Funding Trust 2007-7, MORTGAGE | : | |
| ELECTRONIC REGISTRATION | : | |
| SYSTEMS INC., and BANK OF | : | |
| AMERICA HOME LOANS SERVICING, | : | |
| L.P., | : | |
| | : | |
| Defendants. | : | |

## ORDER, REPORT AND RECOMMENDATION

This is a civil action brought under federal and state law against a number of banking entities by Bosco A. Kante, acting pro se. Plaintiff's nine count complaint alleges causes of action under state and federal law arising from the creation, transfer, and attempted enforcement of a security deed on Plaintiff's property. [Doc. 1]. This matter is before the Court on: (1) Defendants' motion to dismiss, [Doc. 11]; (2) Plaintiff's motion for recusal, [Doc. 14]; (3) Plaintiff's motion to strike, [Doc. 17]; (4) Plaintiff's motion for leave to file an amended complaint, [Doc. 24]; and (5) Plaintiff's "Motion to Correct," [Doc. 27].

# I.
## Background

The facts of this case implicate two separate civil actions filed in this Court:  (1) a previous lawsuit filed by Plaintiff, Kante v. Countrywide Home Loans, et al., 1:09-cv-1223 ("Kante I"); and (2) the instant matter, Kante v. McCurdy & Candler LLC, et al., 1:10-cv-1972 ("Kante II").

### A.  General Facts

On March 23, 2007, Plaintiff executed a promissory note secured by a security deed for property located at 1861 DeFoor Avenue, Atlanta, Georgia 30318. [Doc. 26-1].  The deed identified Greenpoint Mortgage Funding, Inc., as the "Lender." [Doc. 26-1, at 3].    Furthermore, the deed designated as grantee "Mortgage Electronic Registration Systems, Inc.[,] a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." [Doc. 26-1, at 2].  On April 5, 2007, the deed was recorded with the Clerk of Superior Court of Fulton County in Deed Book 44767, page 496. [Doc. 1-1, at 28].

### B.  Kante I

On May 8, 2009, Plaintiff filed a lawsuit in this Court naming the following parties as defendants: "Countrywide Home Loans, Chicago Title Insurance Company, Greenpoint Mortgage Funding Inc., Mortgage Electronic Registration Systems Inc., McCurdy & Candler L.L.C., Trustee JOHN Does 1-5 , unknown

-2-

investors JOHN ROES 1-20 , being undisclosed appraisers, mortgage aggregators (wholesalers), mortgage originators, loan seller, Trustee of Pooled Assets,[]Trustee for holders of certificates of Collateralized Mortgage Obligations." <u>Kante I</u>, [Doc. 1].  Though Plaintiff's allegations in <u>Kante I</u> were less than clear, the Complaint alleged federal and state claims based upon alleged disclosure violations made during the execution of Plaintiff's mortgage loan. <u>Kante I</u>, [Doc. 1, at ¶ 6].  Plaintiff also alleged that Defendants violated federal and state law while attempting to enforce the note and security deed.  Of relevance to the instant matter, Plaintiff also raised a claim for fraud based upon a May 1, 2009, letter, ("the 5/1/09 Letter") sent from Defendant McCurdy and Candler LLC, ("McCurdy"), to Plaintiff, which allegedly threatened foreclosure on Plaintiff's property. <u>Kante I</u>, [Doc. 1, at 3].

On July 20, 2009, Countrywide Home Loans ("Countrywide"), Greenpoint Mortgage Funding Inc., ("Greenpoint") and Mortgage Electronic Registration Systems Inc., ("MERS") filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Kante I</u>, [Doc. 18].  On March 24, 2010, District Judge Carnes issued an order granting the motion to dismiss, leaving Chicago Title Insurance Company, ("Chicago Title") as the sole remaining defendant. <u>Kante I</u>, [Doc. 44].  On June 16, 2010, Plaintiff and Chicago Title filed a joint stipulation of

dismissal. <u>Kante I</u>, [Doc. 47]. The <u>Kante I</u> action was dismissed the same day. <u>Kante I</u>, [Doc. 48].

On June 25, 2010, Plaintiff filed the instant action – <u>Kante II</u> – in this Court.

**C. <u>Kante II</u>**

In the present action, Plaintiff has named the following parties as defendants: (1) "McCurdy & Candler L.L.C.;" (2) "U.S Bank National Association as Trustee for the Certificate Holders of Banc of America Funding Trust 2007-7," ("USBNA"); (3) "Mortgage Electronic Registration Systems Inc.;" and (4) "Bank of America Home Loans Servicing, L.P formerly known as Countrywide Home Loans Servicing L.P.," ("BOA"). [Doc. 1]. In his complaint, Plaintiff repeats some of the same allegations from <u>Kante I</u>. Specifically, Plaintiff alleges that: (1) the 5/1/09 Letter from McCurdy & Candler, L.L.C., "constitutes Mail Fraud", [Doc. 1, ¶ 40]; and (2) the previously-made disclosure violations constitute Civil Rico and Civil Conspiracy violations [Doc. 1, ¶¶ 36, 81]. However, Plaintiff also asserts a number of  new claims, such as: (1) a Fair Credit Reporting Act claim brought against Defendant BOA alleging that BOA provided inaccurate information to credit reporting agencies in February, March, April and May of 2010, [Doc. 1, at paragraphs 56-61]; and (2) slander and libel claims brought against Defendants USBNA and McCurdy based upon

-4-

foreclosure notices published in June of 2010 which identified Defendant USBNA as Plaintiff's creditor. [Doc. 1, ¶¶ 63-78].[1]

In their motion to dismiss, Defendants allege that "any claims based on these allegations could and should have been brought to the Court's attention in <u>Kante I</u>. Accordingly, all of the claims set out in the <u>Kante II</u> Complaint are barred by the doctrine of res judicata and are due to be dismissed." [Doc. 11-1, at 7].

## II.
## Initial Matters

### A.  Motion to Strike

Plaintiff asks this Court to strike Defendants' motion to dismiss, "for failure to make notice of appearance and file a certificate of interested parties prior to filing a pleading in the present case." [Doc. 17, at 5-6].[2]

### 1.  Local Rule 3.3 and Certificates of Interested Persons

Local Rule 3.3 provides that:

> In order to enable judges and magistrate judges of this court to evaluate possible disqualification or recusal,

---

[1]  Additionally, the Complaint included a request for a temporary restraining order. [Doc. 1]. This motion was denied by District Judge Carnes. [Doc. 5].

[2]  Plaintiff has also moved to strike Defendants' motion to stay, [Doc. 12]. [Doc. 17]. However, the motion to stay has since been granted by this Court. [Doc. 18]. Accordingly, Plaintiff's motion to strike Defendants' motion to stay is **DENIED as MOOT.**

> counsel for all private (nongovernmental) parties in
> civil cases must at the time of first appearance file
> with the clerk a certificate containing:  (1) A
> complete list of the parties and the corporate
> disclosure statement required by FRCP 7.1. (2) A
> complete list of other persons associations, firms,
> partnerships, or corporations having either a financial
> interest in or other interest which could be
> substantially affected by the outcome of this
> particular case. (3) A complete list of each person
> serving as a lawyer in this proceeding . . .

LR NDGa. 3.3(A).

Here, it is undisputed that Defendants USBNA, MERS, and BOA filed their certificate of interested persons at the time of their first appearance.  [Doc. 9].  However, Defendant McCurdy Candler did not file its required certificate until August 18, 2010, approximately a month after it made its appearance and filed its motion to dismiss.  [Doc. 20].  Therefore, the undersigned concludes that, strictly speaking, Defendant McCurdy Candler violated the terms of Local Rule 3.3.  Having reached this conclusion, the question becomes whether Defendant McCurdy's violation of the rule warrants the relief Plaintiff seeks.  Upon consideration, the undersigned concludes that it does not.

As stated in the text of the rule, Local Rule 3.3 is designed to insure that the judges and magistrate judges of this Court are aware of any potential grounds for recusal.  LR 3.3 NDGa.  When a party fails to comply with the disclosure requirements of the local rules, the Court is denied the opportunity to make the necessary determination of whether recusal or disqualification is

-6-

necessary.   Here, Defendant McCurdy remedied its Rule 3.3 violation when it filed its certificate of interested persons on August 18, 2010, a month late.   Plaintiff has suffered no prejudice because of this late filing.   Accordingly, Plaintiff's motion to strike Defendants' motion to dismiss for failure to comply with Local Rule 3.3 is **DENIED**.[3]

> **2. Local Rule 63.1 and Attorneys' Notices of Appearance**

Plaintiff next submits that his motion to strike is proper because certain attorneys for the Defendants failed to submit notices of appearance as prescribed by Local Rule 83.1.  [Doc. 17].   Defendants respond that these "Notices were not required under the Local Rules [because] Local Rule 83.1(D)(1) allows attorneys to enter an appearance by signing a Rule 12(b) motion, which Defendants' counsel did when they filed the Joint Motion to Dismiss on July 20, 2010."  [Doc 22, at 3 n. 1].

Local Rule 83.1D(1) governs the filing of notices of appearances, providing that:

> In Civil Cases [a]n attorney's appearance as attorney of record for a party may be evidenced, for plaintiff, by signature on the complaint at filing and, for defendant, by signature on the answer to the complaint or on a Fed.R.Civ.P. 12(b) motion filed prior to answer. Any other attorney who signs a subsequent

---

[3]   The undersigned notes that Plaintiff filed three separate motions before filing his certificate of interested persons, and was likewise in violation of Local Rule 3.3.

pleading or paper on behalf of a party must file a notice of appearance with the clerk.

An attorney whose appearance has not been previously noticed will not be permitted to represent a party at trial or in any other court proceeding until the attorney has filed a notice of appearance with the clerk. Failure to file a notice of appearance may result in the attorneys not receiving notices, orders, or other important communications from the court.

In the instant matter, on July 6, 2010, Attorneys Charlotte M. Ritz, Lawrence J. Bracken II and Cherie A. Phears of the law firm Hunton & Williams LLP entered notices of appearance on behalf of Defendants USBNA, MERS and BOA. [Docs. 6-8].[4] Similarly, on July 20, 2010, Defendant John D. Andrle filed a motion to dismiss on behalf of Defendant McCurdy which bore his electronic signature. [Doc. 11-1 at 16].[5]

The above mentioned attorneys are the only counsel to have appeared in this case. Accordingly, there has been no violation of Local Rule 83.1, and Plaintiff's motion to strike on such grounds is without merit.

---

[4] This Court notes that Document 8, which is the notice of apperance for Counsel Phears, is docketed as a second notice of appearance for Counsel Ritz. This may have contributed to Plaintiff's confusion. Accordingly, the Clerk is **DIRECTED** to re-docket document 8 to correctly identify the filed text.

[5] Pursuant to Standing Order No. 04-01 a document is signed when it is filed electronically and bears the following language: "/s (attorney name)." The July 20, 2010, motion to dismiss was signed "/s John D. Andrle." [Doc. 11-1, at 16].

**B.  Recusal**

Plaintiff has also filed a motion to recuse Judge Carnes from the present case. [Doc. 14].

Federal law provides for two grounds of recusal of a district judge.  First, 28 U.S.C. § 144 provides that:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

Second, 28 U.S.C. § 455 provides, in relevant part, that:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances:  (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C. § 455(a)-(b)(1).

Here, Plaintiff seeks recusal under both statutes based on a number of perceived indices of bias:

-9-

(1) First, Plaintiff cites to Judge Carnes' statement in the order denying his motion for a temporary restraining order that "it appears that plaintiff is continuing to live . . . rent-free." [Doc. 14, at 7]. Plaintiff argues that this statement is an indication that Judge Carnes "believes . . . 'rent' is due to Defendants." Id.

(2) Second, Plaintiff points to Judge Carnes' statements that "Defendant USBNA . . . is apparently the John Roes 1-20 listed in [Kante I]" and "plaintiff has previously lost in his earlier action against these defendants." [Doc. 14, at 7-8]. Plaintiff contends that these statements reflect a decision on "a question of fact that is properly reserved for a jury in this jury trial." [Doc. 14, at 8].

(3) Third, Plaintiff submits that Judge Carnes "should have required an evidentiary hearing prior to denying the TRO [g]iven that a clear controversy exists over who is the creditor in this case." [Doc. 14, at 10].

Based on the foregoing, Plaintiff argues that Judge Carnes "has already decided the case based on bias and assumptions from a previous case and not the facts of the present case." [Doc. 14, at 10].

### 1.  Applicable Standard

The standard for determining recusal under § 144 is the same as for § 455(b)(1).  See U.S. v. Catalano, 2010 WL 3994714 at *3 (M.D.Fla. 2010); see also U.S. v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985) ("we . . . view judicial interpretations of 'personal bias or prejudice' under § 144 as equally applicable to § 455(b)(1)."); Ryburn v. Westerman, 2010 WL 2813354 at *2 (S.D.Ill. 2010) ("the Court undertakes the same analysis of § 455(b)(1) actual bias that it would under § 144."); In re Olsen,

358 B.R. 609, 623 n. 12 (S.D.N.Y. 2007) ("the standards for disqualification under §§ 144 & 455(b)(1) are the same."). Furthermore, "within the area of overlap, it is unreasonable to interpret § 455(a) . . . as implicitly eliminating a limitation explicitly set forth in § 455(b)." Liteky v. U.S., 510 U.S. 540, 553, 114 S.Ct. 1147 (1994). Thus, "[t]he standard for determining the existence of bias or prejudice is the same for sections 144, 455(a) and (b)(1)." U.S. v. Brown, 2008 WL 2064629 at *1 (D.Vt. 2008). Put differently, where recusal would be inappropriate under 455(b)(1) for a lack of "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," a judge's partiality may not be reasonably questioned on such grounds under § 455(a). See Liteky, 510 U.S. at 553 ("[i]t would obviously be wrong . . . to hold that [a judge's] 'impartiality could reasonably be questioned' simply because one of the parties is in the fourth degree of relationship to the judge [where s]ection 455(b)(5) . . . ends the disability at the third degree of relationship.").

Where, as here, a party claims bias based on prior proceedings, the Supreme Court has held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . prior proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment

-11-

impossible." Id. at 555.   Accordingly, "judicial remarks made during the course of a trial . . . will [only support a bias or partiality challenge] if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id.

### 2.   Allegations of Bias

Here, neither Judge Carnes' denial of an evidentiary hearing, nor her statements or comments regarding the apparent merits of Plaintiff's lawsuit, approach the level of antagonism necessary to support a bias challenge.   Rather, any statements about the merits of Plaintiff's case relate to the judicial decision on Plaintiff's likelihood of success on the merits of his case, a necessary determination when ruling on a motion for a temporary restraining order.   See KH Outdoor, LLC v. City of Trussvile, 458 F.3d 1261, 1268 (11th Cir. 2006) (discussing requirements for a temporary restraining order).

Because a decision on the likelihood of success on the merits heavily influences whether a motion for a temporary restraining order should be granted, see Scott v. Roberts, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[t]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor"), and whether an evidentiary hearing is necessary, see Ellison v. Abbe, 2009 WL 362977 at *3

-12-

(S.D.Ga. 2009) (denying evidentiary hearing where no demonstration of a likelihood of success), a judge deciding such a motion must necessarily express an opinion on the merits of a plaintiff's case.   Judges Carnes' statements and comments made in connection with the decision on Plaintiff's motion for a TRO clearly fall within the parameters of fair comment on this issue and do not demonstrate any debilitating bias that would warrant recusal. Byrne v. Nezhat, 261 F.3d 1075, 1102 –1103 (11th Cir. 2001) ("Precedent clearly holds that adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.").  A contrary holding would necessitate the recusal of virtually any judge who denies a motion for a temporary restraining order and makes any fair comment regarding the likely merits of the case.  Plaintiff's motion for recusal is **DENIED.**

    **C.  "Motion to Correct"**

    Plaintiff has also filed a "Motion to Correct." [Doc. 27]. Plaintiff's motion alleges that "[o]n September 3rd, 2010, the Court Clerk attached Plaintiff's First Amended Complaint to Plaintiff's September 1st, 2010 Motion for Leave to Amend as an Attachment . . . and failed to file Plaintiff's First Amended [Complaint] as requested by Plaintiff." [Doc. 27, at 6].

    Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course

-13-

within: . . . 21 days after serving it, or [within] 21 days after service of a motion under Rule 12(b)." Fed.R.Civ.P. 15(a)(1). If a party may not amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or with the court's leave." Fed.R.Civ.P 15(b).

At the time Plaintiff filed his amended complaint, more than 21 days had elapsed since: (1) he filed his original complaint; and (2) since he had been served with the Defendants' Rule 12(b) motion.[6]   Therefore, Plaintiff could only file an amended complaint with the permission of opposing counsel, or with leave of this Court.  Since Plaintiff had obtained neither at the time his "First Amended Complaint" was filed, the Clerk was correct in not filing the document.  Accordingly, because Plaintiff was not entitled to file an amended complaint at the time it was submitted, his motion should be **DENIED**.

### III.
### Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff does not plead "enough

---

[6] Plaintiff argues that this Court should measure the 21 days from the date Defendant McCurdy filed its certificate of interested persons, rather than the date the motion to dismiss was served. Rule 15 does not make this distinction, and neither will this Court. See Fed.R.Civ.P 15(a) (allowing for an amendment as of right within "21 days *after service* of a motion under Rule 12(b)."). The undersigned also rejects Plaintiff's argument that Defendants filed a Rule 56 motion for summary judgment, rather than a Rule 12(b) motion to dismiss.

-14-

facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547; 127 S.Ct. 1955, 1974 (2007). When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006)(citation omitted); Fuller v. Johannessen, 76 F.3d 347, 349-350 (11th Cir. 1996). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

Since Twombly, the Supreme Court has clarified that Rule 8 of the Federal Rules of Civil Procedure requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S., 129 S.Ct. 1937, 1949 (2009). To this end, the plaintiff must plead "factual content that [would] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Though generally still subject to the Twombly standard, "[p]ro se pleadings are held to a less stringent standard than

-15-

pleadings drafted by attorneys, and will, therefore, be liberally construed." <u>Peart v. Shippie</u>, 2009 WL 2435211 *1 (11th Cir. 2009).

## IV.
## Discussion

"Res judicata, or more properly claim preclusion, is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy; it bars claims that could have been litigated as well." <u>In re Atlanta Retail, Inc.</u>, 456 F.3d 1277, 1284 (11th Cir. 2006). In order for a party to invoke the doctrine of res judicata, it must make four showings:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

<u>Id</u>. at 1284-85. Because there is no dispute that the <u>Kante I</u> judgment was valid, final[7], and on the merits[8], this Court will address only the latter two elements.

---

[7] Although Plaintiff has argued that <u>Kante I</u> was not "final" because he filed various motions after the case was terminated, the motions Plaintiff cites have since been disposed of.

[8] A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is an adjudication on the merits. <u>NAACP v. Hunt</u>, 891 F.2d 1555, 1560 (11th Cir.1990)

**A.  The Identity of the Parties**

The Eleventh Circuit has identified two situations in which the identity requirement for res judicata will be met.  Hunt, 891 F.2d at 1560.  First, identity exists for "those persons who were actual parties in the original action." Id.  Second, the identity requirement is met for "those persons who are or were in privity with the parties to the original suit."  Id.  In this regard, "[p]rivity exists where the nonparty's interests were represented adequately by the party in the original suit [or] where a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative."  Id.

Defendants argue that "it is clear that two of the Defendants named in Kante II – MERS and McCurdy & Candler – were also defendants in Kante I.  [Doc. 11-1, at 11].  Similarly, Defendants contend that Defendant BOA is in privity with Countrywide, a defendant in Kante I, because "[i]n Kante II, Plaintiff has sued 'Bank of America Home Loans Servicing, LP formerly known as Countrywide Home Loans Servicing, LP."  Id.  Finally, Defendants submit that Defendant U.S. Bank "is the entity referred to as 'Trustee JOHN Does 1-5, unknown investors JOHN ROES 1-20' in Kante I."  [Doc. 11-1 at 12].

Plaintiff appears to concede that Defendants McCurdy, MERS and BOA were parties to the Kante I judgment.  [Doc. 16, at 13].  However, Plaintiff argues that "[n]o evidence has been presented

-17-

that Defendant U.S. Bank is 'Trustee JOHN Does 1-5, unknown investors JOHN ROES 1-20" as alleged by Defendants."

First, there can be no doubt that Defendants McCurdy and MERS are the same parties named as defendants in Kante I.   Accordingly the identity requirement is met for these two defendants.   See Hunt, 891 F.2d at 1560 (identity requirement met where "persons . . . were actual parties in the original action.").   Furthermore, where, as here, a "[p]laintiff has asserted no specific claims against Bank of America that differ from claims asserted against Countrywide . . . Bank of America is [sued only as] a successor in interest to the mortgage that was owned by Countrywide and the parties are in privity with each other for res judicata purposes." Anderson v. Bank of America, 2009 WL 3647516 at *4 (S.D.Miss. 2009).   Accordingly, Defendant BOA has met the identity requirement as well.[9]

Turning to Defendant USBNA, the undersigned rejects the Defendants' contention that USBNA was an actual party to Kante I simply because Plaintiff chose to include fictitious parties in the suit.   See Nagle v. Lee, 807 F.2d 435, 440 (5th Cir. 1987) ("the mere naming of a person through use of a fictitious name does not make that person a party absent voluntary appearance or proper service of process.") (citing Hart v. Yamaha-Parts

_____

[9]   Plaintiff's complaint includes only allegations regarding Countrywide. [Doc. 1].

-18-

<u>Distributors, Co.</u>, 787 F.2d 1468, 1471 (11th Cir. 1986)).
Furthermore, because Defendant USBNA has failed to offer any other
argument as to why it might be considered in privity with one of
the actual parties from <u>Kante I</u>, the undersigned concludes that
dismissal of Defendant USBNA on res judicata grounds would be
inappropriate at this stage.

   **B.  Identity of Claims**

   The Eleventh Circuit has recognized that "the principal test
for comparing causes of action is whether the primary right and
duty or wrong are the same in each action." <u>Hunt</u>, 891 F.2d at
1561.  Because "[r]es judicata applies not only to the precise
legal theory presented in the prior case, but to all legal
theories and claims arising out of the same nucleus of operative
fact," <u>id</u>., the doctrine "bars relitigation of matters that . . .
could have been litigated in [the] earlier suit." <u>Manning v. City
of Auburn</u>, 953 F.2d 1355, 1358 (11th Cir. 1992).

   Here, as described above, the instant complaint asserts a
number of claims not asserted in <u>Kante I</u>. [Doc. 1].  However, in
their motion to dismiss Defendants contend that "[t]he fact that
the <u>Kante II</u> Complaint contains some allegations that are not set
forth in the <u>Kante I</u> Complaint does not preclude application of
res judicata, because these allegations *could have been* asserted
in <u>Kante I</u>." [Doc. 11-1, at 13] (emphasis in original).
Specifically, Defendants argue that "the wrongful conduct

-19-

described in Kante II allegedly occurred *before* final judgment was entered in Kante I on June 16, 2010." [Doc. 11-1, at 14].

While it is true that most of the alleged conduct in the Kante II complaint occurred before the final judgment entered in Kante I, this fact does not justify dismissal.  Indeed, the claim preclusion doctrine serves only to bar claims which were "in existence at the time the original complaint [wa]s filed." Manning, 953 F.2d at 1360 ("we do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation.").  Accordingly, dismissal of Plaintiff's claims on res judicata grounds will be appropriate only to the extent that such claims existed before May 8, 2009, the date Kante I was filed.  Id.[10]

In this regard, Counts one through four[11], and Counts seven through nine of Plaintiff's complaint assert claims at least partially based on the fact that, throughout the month of June 2010, the Daily Report published a notice representing that "Defendant McCurdy acting as counsel for Defendant U.S. Bank had

---

[10]   In their reply brief Defendants appear to concede this point. [Doc. 23, at 5].

[11]   Counts four and nine of Plaintiff's complaint, reference certain acts which occurred before the filing of Kante I.  To the extent that Plaintiff seeks to impose liability upon Defendants MERS, McCurdy and BOA, such claims would be subject to dismissal.

submitted a notice stating its intent to foreclose on Plaintiff's property [on] July 6 . . . 2010." ("The June Notices") [Doc. 1, at ¶ 9]. Because the June Notices were published after the filing of <u>Kante I</u>, any claims arising from these publications would not be barred by res judicata.

Similarly, count five[12] of Plaintiff's complaint asserts a claim under the Fair Debt Collection Practices Act against Defendant McCurdy based upon the June Notices and the 5/1/09 Letter. [Doc. 1, at ¶¶ 52-53]. Although the claims arising from the June Notices are not barred by res judicata, for the reasons described above, any claims based upon the 5/1/09 letter would be barred, and should be **DISMISSED**.

Count six of Plaintiff's complaint asserts a Fair Credit Reporting Act claim against Defendant BOA based upon certain disclosures made to credit reporting agencies in March, April and May of 2010. [Doc. 1, at ¶¶ 55-62]. Because the claims based upon these alleged acts arose after the filing of <u>Kante I</u>, they would not be barred by res judicata.

**C. Conclusion**

Based upon the foregoing, it is **RECOMMENDED** that Defendant USBNA's motion to dismiss on res judicata grounds be **DENIED**.

---

[12]  This claim is inaccurately labeled number three in the Complaint.

-21-

Furthermore, it is **RECOMMENDED** that the motions to dismiss of Defendants MERS, BOA and McCurdy be **GRANTED** to the extent that Plaintiff has asserted claims in existence at the time <u>Kante I</u>, was filed, and **DENIED** as to all other claims.

Defendants argue that it is impossible to discern which facts Plaintiff intends to support which of his claims. [Doc. 23, at 5]. Accordingly, Defendants urge this Court to "order Plaintiff to re-plead his complaint to remove all causes of action that came into being before <u>Kante I</u> was filed." [Doc. 23, at 5 n. 3].  While a party may not raise a new issue in a reply brief, <u>See</u> <u>Adams v. Cobb County School Dist.</u>, 2006 WL 2506495 at *9 (N.D.Ga. 2006) (collecting cases), a Court may grant such relief <u>sua</u> <u>sponte</u>. <u>Wagner v. First Horizon Pharm. Corp.</u>, 464 F.3d 1273, 1275 (11th Cir. 2006).

**D.   The Need for a More Definite Statement**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2). The purpose of this requirement is to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "  <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted). To this end, Federal Rule 10(b) requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited

as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  When, as a result of a failure to comply with the above rules, a complaint is so vague or ambiguous that the defendant cannot reasonably prepare a response, the defendant may move the district court for a more definite statement under Federal Rule of Civil Procedure 12(e)."  Branham v. Astrue, 2009 WL 1025393 (M.D. Ga. 2009).  Alternatively, a district court has a "supervisory obligation" under Rule 12(e) to sua sponte direct a plaintiff to better plead his complaint when it "fails to adequately link a cause of action to its factual predicates." Wagner, 464 F.3d at 1275.

While there is no set standard for the sufficiency of a complaint, a court should consider whether "[p]laintiff's complaint is an argument about the merits of his claim, rather than a complaint for relief."  Branham, 2009 WL 1025393 at *1. Similarly, the Eleventh Circuit has observed that "[w]here . . . each count [of a complaint] incorporates every antecedent allegation by reference, the defendant's affirmative defenses are not likely to respond to a particular cause of action but, instead, to the complaint as a whole.  Such disjointed pleadings make it difficult, if not impossible to set the boundaries for discovery."  Byrne v. Nezhat, 261 F.3d 1075, 1129 (11th Cir. 2001).

-23-

Here, each count of Plaintiff's thirty-four page complaint "adopts and realleges all prior paragraphs as if set out here in full." <u>See</u> [Doc. 1]. Furthermore, like in <u>Branham</u>, the complaint is riddled with citations and legal arguments. Accordingly, the undersigned concludes that Plaintiff has failed to link his claims to their factual predicates and that, therefore, Defendants cannot reasonably be expected to produce a responsive pleading to Plaintiff's complaint. In light of this conclusion, the undersigned **STRIKES** Plaintiff's complaint. Plaintiff is **DIRECTED** to, within fifteen days of the entry of this order, file a complaint that complies with the Federal Rules of Civil Procedure. Furthermore, Plaintiff is **DIRECTED** to omit all claims brought against Defendants MERS, BOA and McCurdy which arose before the filing of <u>Kante I</u>.

### E. Motion to Amend

Finally, Plaintiff seeks leave to amend his complaint. Specifically, Plaintiff contends that "Defendant U.S. Bank National Association as Trustee for the Certificate holders of Banc of America Funding Trust 2007-6 was erroneously sued as U.S. Bank National Association as Trustee for the Certificate Holders of Banc of America Funding Trust 2007-7." [Doc. 24, at 6]. Defendants do not oppose an amendment correctly identifying Defendant USBNA. [Doc. 26].

-24-

Additionally, Plaintiff asserts that he recently became aware of a purported assignment of Plaintiff's security deed and indebtedness from Defendant MERS to Defendant USBNA, which occurred on June 28, 2010, and which was recorded on July 1, 2010 ("the 6/28/10 Transfer").[13] [Doc. 24].  Plaintiff argues that this fact supports a claim for wrongful foreclosure because it shows that Defendant USBNA was not the creditor at the time of the June notices. [Doc. 24].  Plaintiff also contends that the purported assignment supports a claim for fraud. [Doc. 24-1].

As discussed above, Plaintiff may not amend his complaint as of right.  Therefore, he must obtain leave of the Court.  When a plaintiff seeks leave to amend pursuant to Rule 15, "leave shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  Despite the scope of this requirement, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  Hall v. United Ins. Co. of America, 367 F.3d 1255, 1262-63 (11th Cir. 2004).  "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."  Id. at 1263.  Furthermore, a district court may deny leave to amend under Rule 15(a) where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

---

[13] These documents were attached to Defendants' reply brief in support of their motion to dismiss. [Doc. 23].

amendments previously allowed [or] prejudice to the opposing party by virtue of allowance of the amendment." Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). "The nonmovant bears the burden of showing prejudice, bad faith and futility of the amendment. Saxon v. Lemke, 2010 WL 4608613 (S.D.N.Y. 2010); see also 6 CHARLES ALAN WRIGHT AND ARTHUR MILLER, Federal Practice and Procedure § 1473 (3d ed. 2010) (leave under Rule 15(a) should be granted unless "other parties to the action can show . . prejudice . . . or that the proposed amendment is totally frivolous.").

Here, Defendants argue that leave should be denied because: (1) Plaintiff's motion is an attempt to delay the proceedings and (2) the amendment would be futile. [Doc. 26]. Because Defendants' allegation of a dilatory motive seems to rest on the assumption that Plaintiff's amendment would be futile, this Court will address the futility argument first.

In his amended complaint, Plaintiff seeks leave to plead the existence of the 6/28/10 Transfer and to add two additional claims: (1) a state law claim for fraud against Jessica Price and Michael Dugan, the attorneys with Defendant McCurdy who executed the June 28, 2010, assignment, and against Defendants McCurdy, USBNA; and (2) a request for a temporary restraining order preventing Defendants from foreclosing on Plaintiff's property due to Defendants' inability to produce "an original, properly indorsed, note." [Doc. 24-1].

-26-

Plaintiff's motion thus rests on three separate arguments: (1) that the Defendants are required to produce an original note in order to foreclose; (2) that the 6/28/10 Transfer is improper and would support a claim for fraud and (3) that the 6/28/10 Transfer is evidence of the inaccuracy of the June Notices, and will therefore support his claims that the June Notices constituted fraud and "Civil Libel." [Doc. 28, at 8]. The undersigned will consider each contention in turn.

### 1. Plaintiff's "Show The Note" Theory

As an initial matter, this Court notes that Plaintiff's "show the note" argument - that Defendants must produce an original note in order to foreclose - has already been considered and rejected by numerous courts. <u>See</u> <u>Webb. Suntrust Mortg., Inc.</u>, 2010 WL 2950353 at *2 n.5 (N.D.Ga. 2010) (collecting cases). Accordingly, the undersigned concludes that an amendment to add this claim would be futile.

### 2. The Propriety of the Transfer

Plaintiff contends that the purported transfer of the note and the security deed from Defendant MERS to Defendant USBNA is invalid because Defendant MERS did not have authority to effect such a transfer, and that the filing of the allegedly invalid security deed constitutes fraud. [Doc. 28]. Specifically, Plaintiff argues that "[t]his alleged assignment . . . is void [because] Defendant MERS does not possess or own a Note to

-27-

Plaintiff's property, and therefore cannot transfer that which it does not own [and] Plaintiff is not indebted to Defendant MERS, and therefore Defendant MERS cannot transfer or assign Plaintiff's alleged indebtedness." [Doc. 24-1, at 30].  Plaintiff also alleges that the transfer is void for lack of consideration and because it was conducted in violation of the Georgia Rules of Professional Conduct. [Doc. 24-1 at ¶¶ 100-101].  Plaintiff's contentions are without merit.

Under Georgia law, "[t]ransfers of deeds to secure debt . . . shall be sufficient to transfer the property therein described *and the indebtedness therein secured, whether the indebtedness is evidenced by a note*."  O.C.G.A. § 44-14-64(b) (emphasis added). Thus, an "[a]ssignment of a security deed also transfers the debt secured thereby." In re Dewberry, 2010 WL 4882016 at *2 (N.D.Ga. 2010) (citing O.C.G.A. § 44-14-64(b)).  Because an assignment of a security deed transfers the debt secured by the deed, it necessarily follows that a holder of a security deed also holds the debt secured by the deed.  Therefore, the undersigned concludes that, where an entity is assigned a security deed as a nominee for the lender and noteholder, the entity is also assigned the debt, and holds both in trust for the noteholder. See O.C.G.A. § 44-14-64(b).  Accordingly, the purported transfer of the security deed and the underlying debt will be considered valid

-28-

so long as Defendant MERS had the authority to effect the transfer.

In this regard, the security deed, which Plaintiff signed, clearly granted MERS the authority to assign its interest. See [Doc. 26-1] (granting rights in property, with power of sale to MERS . . . *and the successors and assigns*) (emphasis added). Therefore, the undersigned concludes that Defendant MERS had the authority to transfer an interest in Plaintiff's indebtedness.

Moving then to Plaintiff's other arguments regarding the transfer's validity, Plaintiff argues that the assignment is invalid because the "[t]he rules of the state bar of Georgia do not allow an attorney and/or firm to simultaneously represent the transferor and the transferee in this transaction." [Doc. 24-1, at ¶ 100]. This argument fails for two reasons. First, Plaintiff has cited no authority, and this Court has been able to find none, where a court has invalidated a contract based upon the rule of professional conduct Plaintiff invokes. Second, even if a violation of a rule of professional conduct could invalidate a contract in such a manner, Plaintiff has not alleged that the attorneys involved in the 6/28/10 Transfer represented both sides in the transaction.

Plaintiff next argues that the 6/28/10 Transfer is void because, despite the language of the assignment representing that it was "FOR VALUE RECEIVED," "no value was received by Defendant

-29-

AO 72A
(Rev.8/82)

MERS." [Doc. 24-1, at ¶ 101.1].   The undersigned finds this conclusory allegation insufficient to state a claim for fraud. See In re Image Masters, Inc., 421 B.R. 164, 184 n.25 (Bkrtcy. E.D.Pa. 2009) ("bald, conclusory allegations that, [party] received no value [are] formulaic recitals of the legal elements of a cause of action that do not suffice to state a claim to relief that is plausible on its face.").   Accordingly, leave to amend to add a claim for fraud based on the June 28 Transfer would also be futile.

### 3.   Supplemental Additional Claims

Finally, Plaintiff seeks leave to plead the 6/28/10 Transfer in his claims for civil libel and for wrongful foreclosure. [Doc. 24-1].   Because Defendants' response in opposition only addresses Plaintiff's wrongful foreclosure claim, the undersigned concludes that Defendant has not demonstrated that Plaintiff's proposed amendment to his claim libel would be futile.   The Court will thus only address the alleged futility of Plaintiff's claim for wrongful foreclosure.

Generally, to state a claim for wrongful foreclosure under Georgia law, a plaintiff must establish that: (1) the defendant owed plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff suffered injury as a result of the breach.   All Fleet Refinishing, Inc. v. West Georgia Nat. Bank, 634 S.E.2d 802, 807 (Ga.App. 2006).   With regard to *attempted* wrongful

foreclosures, Georgia courts have treated such claims as a species of libel, holding that a plaintiff may "recover damages for a wrongful *attempted* foreclosure [upon a showing of] a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication." Aetna Finance Co. v. Culpepper, 171 Ga.App. 315, 319, 320 S.E.2d 228, 232 (Ga.App. 1984) (citing Sale City Peanut & Mill. Co. v. Planters & Citizens Bank, 130 S.E.2d 518, 520 (Ga. App. 1963); Hodson v. Whitworth, 153 Ga. App. 783, 787-88, 266 S.E. 2d 561, 565 (Ga. App. 1980); Mayo v. Bank of Carroll County, 153 Ga. App. 148, 149, 276 S.E.2d 660, 662 (Ga. App. 1981)).

Because Plaintiff's amended complaint alleges that Defendants McCurdy and USBNA knowingly published an untrue statement, and that such publication caused Plaintiff injury, the undersigned concludes that Plaintiff's proposed amended complaint would state a claim for attempted wrongful foreclosure and that, therefore, amendment to add this allegation would not be futile.[14]   Id.

_____

[14]   Though Defendants have not opposed Plaintiff's attempt to amend his complaint to add a libel claim, the undersigned notes that Plaintiff's allegations would also state a claim for libel. See M&M Mortg. Co., Inc. v. Grantville Mill, LLC, 302 Ga.App. 45, 49-50, 690 S.E.2d 630, 633 (Ga.App. 2010) (to state a claim for libel of title, "plaintiff must prove possession of an estate in the subject property; publication of defamatory words against the property; that the words were false and malicious; and that the plaintiff thereby sustained special damages by loss in the value of the slandered property.").

AO 72A
(Rev.8/82)

Furthermore, given that the undersigned has already ordered the Plaintiff to file an amended complaint, the undersigned concludes that no undue delay or prejudice would result from allowing Plaintiff to supplement his civil libel and wrongful foreclosure claims. Accordingly, Plaintiff's motion to amend his complaint is **GRANTED** to the extent that he proposes to add claims for civil libel and wrongful foreclosure.

### V.
### Conclusion

Plaintiff's motions for recusal, [Doc. 14], to strike, [Doc. 17], and "to correct," [Doc. 27], are all **DENIED**. Furthermore, Plaintiff's motion for leave to amend his complaint, [Doc. 24], is **GRANTED in Part and DENIED in Part**. It is **RECOMMENDED** that Defendants' motion to dismiss on res judicata grounds, [Doc. 11], be **GRANTED in Part and DENIED in Part,** as set forth above.

For the reasons described above, Plaintiff's complaint, [Doc. 1], is **STRICKEN**. Plaintiff shall have fifteen days from the entry of this order to re-file a complaint which complies with the Federal and Local Rules of Civil Procedure. In his amended complaint Plaintiff may assert new claims for libel and for wrongful foreclosure, as discussed herein, and may plead the fact of the 6/28/10 Transfer. Plaintiff may not, however, plead additional claims without leave of this Court. Plaintiff is

-32-

cautioned that failure to comply with this order may result in the dismissal of his complaint.

**SO ORDERED, REPORTED AND RECOMMENDED** this 27th day of January, 2011.

_S/ E. Clayton Scofield III_
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

-33-