IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BOSCO A. KANTE,                  :
                                 :
          Plaintiff,             :
                                 :        CIVIL ACTION
     v.                          :
                                 :        NO. 1:10-CV-1972-JEC-ECS
MCCURDY CANDLER LLC,             :
et al.,                          :
                                 :
          Defendants.            :

**<u>O R D E R</u>**

     Attached is the Final Report and Recommendation of the United
States Magistrate Judge in this action in accordance with 28 U.S.C.
§ 636(b)(1) and this Court's Civil Local Rule 72. The Clerk shall
serve this Final Report and Recommendation on the parties.

     Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil
Procedure 72(b)(2), within fourteen (14) days after being served
with a copy, each party may file written objections, if any, to this
Final Report and Recommendation. Should objections be filed, they
shall specify with particularity the alleged error or errors made
(including reference by page number to the transcript, if
applicable) and shall be served upon the opposing party. The party
filing objections will be responsible for obtaining and filing the
transcript of any evidentiary hearing for review by the District
Court. If no objections are filed, the Final Report and
Recommendation may be adopted as the opinion and order of the

District Court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729 (1984).

The Clerk is **DIRECTED** to submit the Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

SO ORDERED this 31st day of January, 2012.

s/ E. Clayton Scofield
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

2

AO 72A
(Rev.8/82)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

BOSCO A. KANTE,            :
                        :
       Plaintiff,     :
                        :      CIVIL ACTION
       v.              :
                        :      NO. 1:10-CV-1972-JEC-ECS
MCCURDY CANDLER LLC,   :
et al.,              :
                        :
       Defendants.    :

**FINAL REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on a motion to dismiss filed by Defendant McCurdy Candler, LLC ("McCurdy"), [Doc. 39]; a motion to dismiss filed by Defendants Bank of America Home Loans Servicing, L.P., ("BOAHLS"), Mortgage Electronic Registration Systems Inc., ("MERS"), and U.S. Bank National Association ("U.S. Bank"), [Doc. 41]; Plaintiff's motion to amend his amended complaint, [Doc. 56]; Plaintiff's motion for Rule 11 sanctions, [Doc. 57]; Plaintiff's motions for temporary restraining orders, [Docs. 85, 86]; and Plaintiff's motion to set aside forfeiture, [Doc. 90].

For the reasons discussed herein, it is **RECOMMENDED** that Defendants' motions to dismiss, [Docs. 39, 41], be **GRANTED**. Having considered Plaintiff's motion to amend his amended complaint, [Doc. 56], and Plaintiff's motion for Rule 11 sanctions, [Doc. 57], it is

3

hereby **ORDERED** that both of these motions are **DENIED**.   In light of the foregoing, the Court **FURTHER RECOMMENDS** that Plaintiff's motions for temporary restraining orders, [Docs. 85, 86] be **DENIED as MOOT**, and that Plaintiff's motion to set aside forfeiture, [Doc. 90], be **DENIED as MOOT**.

**I.**
**Background**

**A.   Procedural Background**

   This is the second civil action brought against several mortgage servicing and banking entities by Plaintiff, acting pro se, based on events relating to a property foreclosure.   See [Doc. 30, at 2-5].   After Defendants in the first civil action, Kante v. Countrywide Home Loans, et. al., 1:09-cv-1223 ("Kante I"), filed motions to dismiss based on Federal Rule 12(b)(6), District Judge Carnes issued an order granting Defendants' motions, leaving Chicago Title Insurance Company as the sole remaining defendant in that first action.   Kante I, [Doc. 44].   Plaintiff and Chicago Title Insurance Company subsequently filed a joint stipulation of dismissal and the Kante I action was dismissed.   Kante I [Docs. 47, 48].   Plaintiff filed the instant civil action on June 25, 2010,

4

also based on events surrounding a pending foreclosure sale of the same home.[1]

On July 7, 2010, Defendants filed a joint motion to dismiss the instant action on res judicata grounds. [Doc. 11]. On January 27, 2011, this Court issued an Order, Report & Recommendation recommending that Defendants' motion be granted in part and denied in part. [Doc. 30]. District Judge Carnes issued an order adopting the report and recommendation on March 11, 2011. [Doc. 37]. As part of the January 27, 2011, order, this Court struck Plaintiff's complaint in its entirety, finding that it failed to link the claims to their factual predicates in a sufficient manner. [Doc. 30, at 24]. Plaintiff was directed to "file a complaint that complies with the Federal Rules of Civil Procedure[] ... [and] to omit all claims brought against Defendants MERS, BOA, and McCurdy which arose before the filing of <u>Kante</u> I." [<u>Id.</u>]. Additionally, the Court granted Plaintiff leave to "assert new claims for libel ... wrongful foreclosure ... and ... the fact of the 6/28/10 transfer[,] but ... not ... additional claims without leave of this Court." [Doc. 30, at 32]. The Court cautioned Plaintiff that his failure to comply with the order may result in the dismissal of the amended complaint and the action. [Doc. 30, at 32-33].

---

[1] It appears that, since the filing of this action, a foreclosure sale occurred on January 3, 2012. <u>See</u> [Doc. 90].

On February 9, 2011, Plaintiff filed an amended complaint containing nine (9) claims, including allegations of fraud, violations of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act, and "civil conspiracy," in addition to the authorized claims for wrongful foreclosure and libel. [Doc. 32]. Defendants filed separate motions to dismiss Plaintiff's amended complaint in March 2011, which are now before the Court.

## B.  Background Historical Facts

On March 23, 2007, Plaintiff executed a promissory note secured by a security deed for property located at 1861 Defoor Avenue, Atlanta, Georgia, 30318, securing a loan of $306,000. [Doc. 26-1]. The security deed identified Greenpoint Mortgage Funding, Inc., as the "Lender." [Doc. 26-1, at 3]. The security deed also designated Defendant MERS as grantee, "acting solely as a nominee for Lender and Lender's successors and assigns," [Doc. 26-1, at 2]. Plaintiff granted and conveyed to MERS and its assigns "the right to foreclose and sell the property." [Doc. 26-1, at 4].

On June 4, 2010, Defendant McCurdy, acting on behalf of Defendant U.S. Bank, sent Plaintiff an "Initial Communication Letter" via certified mail and a copy of an advertisement listed in the Fulton County Daily Report ("Daily Report") entitled "Notice of Sale Under Power." [Doc. 41-3, at 1-6]. The letter informed Plaintiff that the outstanding loan balance was due as a result of

6

Plaintiff's default on his loan obligations. [Doc. 41-3, at 3-4]. The letter also informed Plaintiff that Defendant McCurdy intended to hold a public foreclosure sale of the subject property on July 6, 2010. [Doc. 41-3, at 5]. Plaintiff was provided with the name, address, and phone number of a servicer to contact to discuss potential foreclosure alternatives. [Doc. 41-3, at 2].

The "Notice of Sale Under Power" was published in the Fulton County Daily Report once each week between the dates of June 7, 2010, and June 28, 2010. [Doc. 41-2, at 2]. The notice stated that "[b]ecause of default in the payment of indebtedness, secured by a security deed executed by [Plaintiff] to [Defendant MERS] ... as last transferred to [Defendant U.S. Bank] by assignment," the entire amount of the debt was due and a public foreclosure sale would be held on July 6, 2010. [Doc. 41-2, at 3].

Plaintiff alleges that he learned on June 14, 2010, through the Daily Report Website of Defendants' intent to hold the July 6, 2010, foreclosure sale. [Doc. 32, at 6]. Plaintiff further states that, after searching through public records, he discovered that Defendant U.S. Bank had not yet been assigned the note or security deed on the subject property, even though U.S. Bank was listed as the secured creditor in the "Initial Communication Letter" and the "Notice of Sale Under Power." [Docs. 32, at 7; 41-3, at 2; 41-2, at 3]. Plaintiff filed the instant action on June 25, 2010. [Docs. 1; 32,

7

at 7].  On July 1, 2010, five days before the foreclosure sale was to take place, Defendant MERS filed and recorded an assignment of the security deed to Defendant U.S. Bank, including "the indebtedness described in said Deed ... and all the rights, powers, privileges and securities vested in [MERS] ... by virtue of the aforesaid Security Deed."  [Doc. 41-4, at 2].

## II.
## Defendants' Motions to Dismiss Plaintiff's Amended Complaint

### A.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff.  M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006) (citation omitted); Fuller v. Johannessen, 76 F.3d 347, 349-350 (11th Cir. 1996).  Although the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Further, "[f]actual allegations must be enough to raise a right to relief

8

above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

Since Twombly, the Supreme Court has clarified that Rule 8 of the Federal Rules of Civil Procedure requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). Therefore, the plaintiff must plead "factual content that [would] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.  Exhibits Attached to Defendants' Motion to Dismiss**

Generally, "a court limits its consideration to the pleadings and exhibits attached thereto" when deciding a motion to dismiss. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). If matters outside the pleadings are presented, a court will normally exclude the document or, instead, convert the motion to one for summary judgment under Rule 56.   Fed. R. Civ. P. 12(c).   A document attached to a motion to dismiss may still be considered under Rule 12(b)(6), however, if it is incorporated into the complaint by reference or is one in which a court may take judicial notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 and Supp. 2007).  Thus, for example,

matters of public record, orders, and items appearing in the record of the case may be considered by the court on a motion to dismiss, Wright & Miller, supra, § 1357, as well as documents that are central to the plaintiff's claim and undisputed in terms of authenticity. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross and Blue Shield of Florida, Inc., 115 F.3d 1364, 1369 (11th Cir. 1997). In this context, a challenge to the validity of an attached document, rather than to its authenticity, is an insufficient basis for excluding it from the court's consideration or for converting the motion to one for summary judgment. See Kabir v. Statebridge Company, LLC, et. al, No. 1:11-cv-2747-WSD, 2011 WL 4500050 at *1 n.1 (N.D. Ga. Sept. 27, 2011) (plaintiff's challenge to the validity of a security deed did not preclude the court from considering it or several other exhibits attached to defendant's motion to dismiss).

In this case, Defendants U.S. Bank, MERS, and BAC Home Loans have attached several documents to their motion to dismiss, including the Daily Report's publisher's affidavit [Doc. 41-2]; the notice of intent to foreclose dated June 4, 2010 [Doc. 41-3]; the notice of intent to foreclose dated July 3, 2009 [Doc. 41-5]; the notice of sale under power [Docs. 41-3, 41-2]; and the June 28, 2010, assignment of the security deed [Doc. 41-4]. These attached exhibits are either matters of public record, see Wright & Miller,

10

<u>supra</u>, § 1357, or otherwise central to Plaintiff's claims, <u>see</u> <u>Brooks</u>, 116 F.3d at 1369.  Moreover, Plaintiff only challenges the validity of the June 28, 2010, assignment of the Security Deed, but not the authenticity of what Defendants' exhibit [Doc. 41-4] purports to be — a copy of the original assignment document filed with the Clerk of the Fulton County Superior Court.  <u>See</u> <u>Kabir</u>, 2011 WL 4500050 at *1 n.1.  Considering the complaint in its entirety, <u>see</u> <u>Tellabs, Inc.</u>, 551 U.S. at 322, these documents are all incorporated by reference into Plaintiff's amended complaint.  The Court will examine them, together with all of the prior filings and orders in this case, in making this Report and Recommendation on Defendants' motions to dismiss.

## C.  Plaintiff's Amended Complaint

### 1.  Plaintiff's First Claim: Wrongful Foreclosure

Although somewhat difficult to decipher, Plaintiff's first claim appears to be based on allegations that (1) the notice requirements of O.C.G.A. § 44-14-162.2 were not and could not be met by Defendants; (2) Defendant U.S. Bank was not a secured creditor at the time foreclosure proceedings were initiated and (3) Defendant U.S. Bank, acting as a Trustee for the Certificateholders of Banc of America Funding Trust 2007-6, was not empowered to accept an assignment of the security deed from Defendant MERS.  [Doc. 32, at ¶¶ 9-18.4].  Defendant McCurdy argues that Plaintiff's claim fails

as a matter of law because it does not specify any duty owed to Plaintiff that it breached. [Doc. 39-1, at 8]. Moreover, all Defendants argue that, even if construed in the light most favorable to Plaintiff, the allegations fail to state a claim upon which relief can be granted. <u>See</u> [Docs. 39-1, at 8-10; 41-1, at 3-10].

A plaintiff asserting a wrongful foreclosure claim in Georgia must establish a legal duty owed by the foreclosing party, a breach of that legal duty, a causal connection between the breach and the injury sustained, and damages. <u>All Fleet Refinishing, Inc. v. West Georgia Nat. Bank</u>, 280 Ga. App. 676, 634 S.E.2d 802, 807 (Ga. Ct. App. 2006). "A claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the creditor has no legal right to foreclose." <u>DeGoyler v. Green Tree Serv., LLC</u>, 291 Ga. App 444, 662 S.E.2d 141, 147 (Ga. Ct. App. 2008).

Plaintiff appears to allege that Defendants breached a duty owed to him by "failing to list an entity with whom Plaintiff could negotiate with" in the Notice of Sale sent by Defendant. [Doc. 32 ¶¶ 18.3]. The notice requirements for a non-judicial foreclosure sale under Georgia law are specified at O.C.G.A. § 44-14-162.2:

> (a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to

negotiate, amend, and modify all terms of the mortgage
with the debtor, and shall be sent by registered or
certified mail or statutory overnight delivery, return
receipt requested, to the property address or to such
other address as the debtor may designate by written
notice to the secured creditor. The notice required by
this Code section shall be deemed given on the official
postmark day or day on which it is received for delivery
by a commercial delivery firm. Nothing in this subsection
shall be construed to require a secured creditor to
negotiate, amend, or modify the terms of a mortgage
instrument.

(b) The notice required by subsection (a) of this Code
section shall be given by mailing or delivering to the
debtor a copy of the notice of sale to be submitted to
the publisher.

Here, the June 4, 2010, notice letter sent by Defendant
McCurdy, acting as agent to Defendant U.S. Bank, satisfies all the
above statutory notice requirements. See [Doc. 41-3, at 2-6].
Defendant McCurdy sent the letter via certified mail more than
thirty (30) days before the date of the proposed foreclosure sale,
July 6, 2010. Id. The letter was in writing and contained the
name, address, and telephone number of a servicer for Plaintiff to
discuss the mortgage instrument. Id. Finally, a copy of the Notice
of Sale published in the Fulton County Daily Report was included
with the letter. Id.

Plaintiff also appears to argue that Defendants U.S. Bank and
McCurdy breached a duty owed to him by attempting to foreclose prior
to the filing of the assignment. Specifically, Plaintiff contends

13

that Defendant U.S. Bank could not foreclose on the property because it was not a "secured creditor" at the time the intent to foreclose notices were sent or published, or at any time before the instant action was filed on June 25, 2010. [Doc. 32, at ¶¶ 11, 12, 13]. Nothing in the Georgia statutory notice provisions, however, states that the notice must come from the holder of the note or security deed. See Kabir v. Statebridge Company, LLC, et. al, No. 1:11-cv-2747-WSD, 2011 WL 4500050 at *4 (N.D. Ga. Sept. 27, 2011) (observing that the statutory language does not require the notice of intent to foreclose to come from either the holder of the note or security deed). Moreover, the fact that the advertisement was published before Defendant U.S. Bank received the assignment of the security deed from Defendant MERS is of no consequence to Plaintiff's wrongful foreclosure claim. O.C.G.A. § 44-14-162(b) only requires that "the assignment of a security instrument vesting the secured creditor with title [] be filed prior to the time of sale." Defendant MERS assigned the security instrument and the accompanying power of sale to Defendant U.S. Bank on June 28, 2010. [Doc. 41-4, at 3]; see also [Doc. 26-1].[2]   The assignment was filed in the Fulton County Superior Court on July 1, 2010 — five days before the date scheduled for the foreclosure sale. See [Doc. 41-4]. Because

---

[2]   The security deed executed by Plaintiff grants rights in property, including the power of sale, to Defendant MERS (as nominee for the Lender) and its successors and assigns.

14

the assignment was filed before the date noticed for the foreclosure sale, the statutory requirements under O.C.G.A. § 44-14-162(b) were met. Thus, Defendant U.S. Bank was a "secured creditor" and had the power to foreclose on the property.

To the extent Plaintiff asserts that a foreclosure sale was unauthorized because Defendant MERS did not hold the Note or that separating the Note from the Security Deed renders the Security Deed invalid, variations of this argument have been repeatedly rejected in this district. See Kabir, 2011 WL 4500050, at *5 (citing Brown v. Fed. Nat'l Mortg. Ass'n, No. 1:10-CV3289, 2011 WL 1134716, at *5-*6 (N.D. Ga. Feb. 28, 2011); LaCosta v. McCalla Raymer, LLC, No. 1:10-CV-1171, 2011 WL 166902, at *4 (N.D. Ga. Jan. 18, 2011) (stating that the court "does not read Sammons[3] to require that an entity or individual in possession of the security deed[] must also possess the note before bringing a foreclosure action"); Nicholson v. OneWest Bank, No. 1:10-CV-0795, 2010 WL 2732325, at *4 (N.D. Ga. Apr. 20, 2010) ("[T]he nominee of the lender has the ability to foreclose on a debtor's property even if such nominee does not have a beneficial interest in the note secured by the mortgage."); In re Dewberry, No. 10-60155-WLH, 2010 WL 4882016, at *2 (Bankr. N.D. Ga. Oct. 21, 2010) (creditor has standing to assert claim based on security deed assigned by MERS because assignment of security deed

_____

[3]   Sammons v. Nabers, 184 Ga. 269, 191 S.E. 124 (Ga. 1937).

15

also transfers debt secured by it); but see Morgan v. Ocwen, 795 F. Supp. 2d 1370 (N.D. Ga. 2011) (borrower stated a claim for attempted wrongful foreclosure against loan servicer that published a foreclosure notice without purporting to be acting as note holder or note holder's agent). Georgia state courts have consistently held that a security deed should be construed to allow for the power of sale. Id. (citing Kennedy v. Gwinnett Commercial Bank, 155 Ga. App. 327, 270 S.E.2d 867, 870 (Ga. Ct. App. 1980)). Finally, the Court has already determined in a prior order that Defendant MERS had the authority to transfer an interest in Plaintiff's indebtedness. See [Doc. 30, at 27-29], adopted by [Doc. 37].

Plaintiff's third argument, that the Notice of Sale came from an improper party, is based on a Pooling and Servicing Agreement ("PSA") between Defendant U.S. Bank, acting as Trustee, and the Certificate holders of Banc of America Funding Trust 2007-7, as the beneficiaries. [Doc. 32, ¶¶ 12-17]. Plaintiff appears to assert that, under the terms of the PSA, Defendant U.S. Bank could not legally accept the assignment from MERS and, therefore, notice to Plaintiff was not provided by a secured creditor in violation of O.C.G.A. § 44-14-162.2. [Id.].

The fundamental problem with Plaintiff's argument is that Plaintiff is not a party to the PSA and has no right to interject himself into the legal relations between U.S. Bank and the Trust.

16

Even if U.S. Bank acted outside its authority under the terms of the PSA, (which Plaintiff has by no means demonstrated), this would be a contractual matter between and among the parties to the PSA. Plaintiff as a non-party would have no standing to complain.  The transfer and assignment and the applicable law of Georgia govern the rights of Plaintiff, not the PSA, an agreement in which Plaintiff has no rights whatsoever.

Plaintiff has pointed to no authority to support his argument that the assignment is a nullity or void or that Plaintiff has any standing to assert rights under the PSA.  See Lavonia, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C., 717 F. Supp.2d 724, 743, 748.  Moreover, Plaintiff fails to cite any legal authority for the proposition that a Trustee of an investment trust holding a valid assignment of a security deed may not pursue foreclosure by providing notice of a foreclosure sale or by hiring a law firm to initiate non-judicial foreclosure proceedings.  See, e.g., In re Darlington, No. 09-10691-WHD, 2009 WL 6498171, at *3 (Bankr. N.D. Ga. Sept. 11, 2009.

Accordingly, the Court **RECOMMENDS** that Defendants' motions to dismiss in regards to claim one of Plaintiff's amended complaint be **GRANTED**.

**2.  Plaintiff's Second Claim: Wrongful Foreclosure**

17

Plaintiff's second claim for wrongful foreclosure against Defendants McCurdy, U.S. Bank, and Countrywide alleges a failure to comply with 12 U.S.C. § 1701x(c)(5) of the National Housing Act. [Doc. 32, at 13].  Plaintiff asserts that Defendants breached their duty to advise Plaintiff on home ownership counseling options, thus making any foreclosure sale premature.  <u>Id.</u>  The courts, however, have consistently held that The National Housing Act does not create a private right of action upon which Plaintiff may rely to state a claim.  <u>See, e.g.</u>, <u>Deubert v. Gulf Federal Sav. Bank</u>, 820 F.2d 754 (5th Cir. 1987) (stating that Congress has never included a private right of action in the National Housing Act); <u>Coley v. Accredited Home Lenders, Inc.</u>, No. 4:10-CV-1870-JLH, 2011 WL 1193072, at *2 (E.D. Ark. Mar. 29, 2011) ("Regardless of whether the defendants are in compliance with § 1701x(c)(5), the Act does not create a private right of action."); <u>Zendejas v. GMAC Wholesale Mortg. Corp</u>, No. 1:10-CV-00184-OWW, 2010 WL 2629899, at *4 (E.D. Cal. June 29, 2010) (agreeing with other courts that the Act does not create a private right of action, but instead governs relations between mortgagees and the government) (citations omitted)).  In response to Defendants' argument citing to the above authority, Plaintiff has offered nothing.  Because this claim fails as a matter of law, the Court **RECOMMENDS** that Defendants' motion to dismiss Claim Two of Plaintiff's amended complaint be **GRANTED**.

18

### 3. Plaintiff's Third Claim: Fraud

Plaintiff also claims that Defendants McCurdy and U.S. Bank committed fraud. Specifically, Plaintiff alleges that Defendants published false information in the Daily Report, stating "that they were Plaintiff's 'Attorney in Fact,' that Plaintiff was indebted to Defendant U.S. Bank, and that Plaintiff was in default of said indebtedness," [Doc. 32 ¶ 25], in an attempt to induce Plaintiff to make payments under the threat of foreclosure. [Doc. 32 ¶ 28]. Plaintiff alleges that, because he relied on Defendants' false statements, he has suffered financial and emotional distress. [Doc. 32 ¶].

Under Georgia law, the elements of fraud are "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Crawford v. Williams, 258 Ga. 806, 375 S.E. 2d. 223 (1989); J.E. Black Const. Co., Inc. v. Ferguson Enterprises, Inc., 284 Ga. App. 345, 643 S.E.2d 852, 854 (Ga. App. 2007); see also O.C.G.A. § 51-6-2. When alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see also United States v. Lab. Corp. of Am. Inc., 290 F.3d 1301, 1310 (11th

19

Cir. 2002).  In this context, Rule 9(b) requires that a plaintiff specify with particularity "the who, what, where, when, why, and how of the alleged fraud." <u>WESI, LLC v. Compass Envtl., Inc.</u>, 509 F. Supp.2d. 1353, 1358 (N.D. Ga. 2007).

Here, Plaintiff's fraud claim fails to comply with the pleading standards under <u>Twombly</u> and <u>Iqbal</u>, as well as the heightened pleading standards under Rule 9(b).  Plaintiff's fraud allegations are virtually identical to those alleged in his first complaint, <u>see</u> [Doc. 1, at 13-16].  Although Plaintiff's first complaint was struck for failing to link claims to their factual predicates sufficiently, Plaintiff provides no additional facts in his amended pleadings to support his fraud claim.  Moreover, Plaintiff has not alleged any facts supporting his conclusory statement that he justifiably relied on the statements in the Daily Report, nor has he described with particularity the manner in which the statements misled him or what Defendants gained, as required by Rule 9(b).  <u>See</u> <u>Brooks v. Blue Cross & Blue Shield of Fla.</u>, 116 F.3d 1364, 1371 (11th Cir. 1997).

Additionally, Plaintiff's allegations do not plead the elements of fraud under Georgia law.  First, Plaintiff alleges that the statements in the Daily Report were false, but he does not show how the statements were in any way materially false.  Defendant MERS assigned Plaintiff's indebtedness to Defendant U.S. Bank before the date of the foreclosure sale, <u>see</u> [Doc. 41-4], which allowed

20

Defendant U.S. Bank to initiate the foreclosure process, as previously discussed. Per the terms of the security instrument executed by Plaintiff, Plaintiff agreed to appoint Defendant U.S. Bank (via the assignment from MERS) as his attorney-in-fact to exercise the power of sale if Plaintiff defaulted on the loan.[4] See [Doc. 26-1, at 14]. Thus, U.S. Bank did in fact, prior to the foreclosure sale, become Plaintiff's attorney-in-fact with authority to proceed as it did. Plaintiff does not, and apparently cannot, claim that he was not indebted to some entity with an obligation to pay back the $306,000 in proceeds he received, as required by his loan, nor does he claim that he actually made the required payments in a timely manner.[5]

Even if material falsity of Defendant's statements were not at issue, Plaintiff has not shown in any way that he justifiably relied on Defendants' statements or suffered damages as a result.

---

[4]    As previously discussed, Defendant MERS, as nominee for Lender, had the authority to transfer Plaintiff's indebtedness to Defendant U.S. Bank. See also [Doc. 30, at 27-29], adopted by [Doc. 37].

[5]    Plaintiff splits hairs about whether he was in default by claiming that his mortgage was a nullity, but does not allege anywhere that he has made the payments as required under the Note and Security Deed. If Plaintiff does so claim, then the Court invites him to make that affirmation, in writing and under oath, to the Court, subject to penalties of perjury and sanctions for litigation abuse, should his affirmation prove to be false. Plaintiff has not so stated in his papers, presumably because such an affirmation would be false.

Plaintiff does not allege that he accepted the representations in the Daily Report as true, nor does he allege that he took any action in detrimental reliance on those statements. [Doc. 32, ¶¶ 29-30]. In particular, he contends that the alleged fraud was perpetrated to induce him to make payments, but he does not allege he made any payments. Nor does he contend that the alleged falsity of these statements were not ascertainable by him; indeed, the statements were fully ascertained by him prior to the foreclosure date. In fact, the pleadings show the opposite of any detrimental reliance. Plaintiff has challenged Defendant U.S. Bank's right to foreclose from the start, just as he has with the other defendants in this action and in <u>Kante I</u>.

Moreover, because he has never detrimentally relied on Defendants' allegedly false statements, Plaintiff cannot show that he has suffered any damages as a result of such a reliance. As noted above, Plaintiff does not allege that he paid any money to Defendants upon receiving the foreclosure notices, nor does he allege that Defendants foreclosed despite payments made by him to any other entity. Indeed, the foreclosure that was the subject of the allegedly false notice did not proceed pursuant to the notice. If Plaintiff suffered pain and suffering, such pain and suffering resulted from the fact that his property was later foreclosed upon

22

under the terms of the agreement he signed when he borrowed the funds from the bank to purchase the property.[6] See [Doc. 32 ¶ 30].

Because Plaintiff has neither met the pleading requirements required by the Federal Rules of Civil Procedure, nor averred facts essential to the elements of a fraud claim, the Court **RECOMMENDS** that Defendants' motions to dismiss regarding Count Three be **GRANTED**.

### 4.  Plaintiff's Fourth Claim: Violation of the FDCPA

Plaintiff alleges in Claim Four that Defendant McCurdy violated certain provisions of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et. seq. ("FDCPA"). Plaintiff asserts that Defendant McCurdy was a debt collector under 15 U.S.C. § 1692f(6) and violated § 1692g(a)(2) by publishing a notice of foreclosure that failed to name the creditor to whom the debt is owed. [Doc. 32, ¶¶ 49, 50]. Plaintiff also claims violations of §§ 1692g(b) and 1692e. [Id. ¶¶ 51, 52].

It is well established that a mortgage foreclosure action is not debt collection activity under the FDCPA, but is instead considered "enforcement of a security interest" under 15 U.S.C. § 1692f(6). See e.g., Warren v. Countrywide Home Loans, Inc., 2009 WL 2477764 (11th Cir. 2009). Furthermore, the courts have found

---

[6] The manner in which any later foreclosure of the property occurred, if it has actually occurred, is not the subject of this lawsuit.

23

that the FDCPA does not apply to law firms conducting non-judicial foreclosure proceedings on behalf of the holders of the security interests, regardless of whether these firms identify themselves as debt collectors.  See, e.g., Jenkins v. BAC Home Loan, LP, ___ F. Supp.2d ___, 2011 WL 4543488, at *2-3 (M.D. Ga. Sept. 29, 2011) (finding the defendant law firm to be exempt from the plaintiff's FDCPA claims where it was acting under the direction of the security interest holder); Lacosta v. McCalla Raymer, LLC, No. 1:10-CV-1171-RWS, 2011 WL 166902, at *6 (N.D. Ga. Jan. 18, 2011) (finding defendant law firm to be exempt from Plaintiff's FDCPA claims relating to mortgage foreclosure); Morris v. Equi First Corp., No. 3:09-1086, 2011 WL 1337404, at *4 (M.D. Tenn. Apr. 7, 2011).  Here, Defendant McCurdy was without dispute acting as a law firm on behalf of U.S. Bank in conducting a non-judicial foreclosure.  Thus, whether it be the act of filing a foreclosure action or the communications related to the foreclosure action, "so long as the purpose of the conduct is the enforcement of a security interest, the only section of the FDCPA available to such claims is section 1692f(6)."  Hasburn v. Reconstruct Co., N.A., No. 11-60488-CIV, 2011 WL 3837158 (S.D. Fla. Aug. 24, 2011).

Here, Plaintiff's claims do not allege violations under section 1692f(6) of the FDCPA.  Moreover, Defendant McCurdy was under no obligation to stop foreclosure proceedings after receiving

24

Plaintiff's "Notification of Dispute Letter," [Doc. 32, at 16-17], because it was not a debt collector regulated by sections 1692g or 1692e of the FDCPA.  Instead, Defendant McCurdy was conducting non-judicial foreclosure proceedings on behalf of the holder of a security interest.  Plaintiff, therefore, has not stated a claim against Defendant McCurdy under the FDCPA.

Accordingly, it is **RECOMMENDED** that Defendant McCurdy's motion to dismiss Plaintiff's Fourth Claim be **GRANTED**.

### 5.  Plaintiff's Fifth Claim: Violation of the FCRA

Plaintiff claims that "Defendant Countrywide," which is a non-party to this action, violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. ("FCRA").  Plaintiff bases this claim more precisely on § 1681s-2(a)(1) and (3) subsection (a) of the FCRA. [Doc. 32, ¶¶ 56-61.5].  For clearly apparent reasons, this claim must be dismissed.  Even if Countrywide were a party to this action, and it is not, subsection (a) of the FCRA does not provide for a consumer's private right of action.  See Chipka v. Bank of America, 355 Fed. App'x 380, 383 (11th Cir. 2009) (stating that enforcement of the FCRA under subsection (a) is expressly limited to governmental agencies and officials).  The FCRA limits a consumer's private right of action against a furnisher of credit information to violations of subsection 1681s-2(b), which is not alleged here. Id.; see also § 1681s-2-(c)-(d).  Therefore, because Plaintiff has

25

not stated a claim for relief under the FCRA, the Court **RECOMMENDS** that Defendants' motion to dismiss Claim Five of Plaintiff's amended complaint be **GRANTED**.

### 6. Plaintiff's Sixth Claim: Slander of Title

Plaintiff also claims slander of title against Defendants U.S. Bank and McCurdy. In addition to alleging that Defendants published false statements in the Daily Report - the same statements used to support Plaintiff's fraud claim - Plaintiff alleges that Defendants intended to steal title to the property through a "power of sale." [Doc. 32 ¶ 65]. He further alleges that, even though Defendant MERS and the individuals acting on its behalf knew they had no authority to foreclose, they executed an "Assignment of Note and Security Deed" on June 28, 2010. [Id. ¶¶ 67-67.8]. Plaintiff claims that he has suffered emotional distress in anticipation of the foreclosure and a loss of income due to his inability to work. [Id. ¶ 68].

To state a claim of slander of title under O.C.G.A. § 51-9-11, a plaintiff must prove possession of an estate in the subject property; publication of defamatory words against the property; that the words were false and malicious; and that the plaintiff sustained special damages by loss in the value of the slandered property. M&M Mortg. Co., Inc. v. Grantville Mill, LLC, 302 Ga. App. 46, 690 S.E.2d 630, 633 (2010) (citations omitted).

Here, Plaintiff has failed to allege facts sufficient to prove the elements of a slander of title claim. First, Plaintiff relies on the same set of allegations used to support his claims of fraud and wrongful foreclosure, namely that the statements in the Daily Report were false and malicious. For the reasons previously discussed,[7] Plaintiff cannot show that statements regarding his indebtedness to Defendant U.S. Bank were materially false or malicious, much less defamatory. As in his other claims, Plaintiff does not aver that he was not indebted to some entity, if not U.S. Bank, nor does he claim that he made all his mortgage payments in a timely manner.

Next, Plaintiff has not alleged how or if the statements in the Daily Report resulted in a loss of value to the property, and, even assuming some loss, Plaintiff has not alleged how he sustained any *special* damages from that loss of value. Instead, Plaintiff alleges that he has suffered emotional distress about the pending foreclosure and psychological damage as a result of the litigation, [Doc. 32, at 24], but "emotional distress and mental suffering are

---

[7] The pertinent facts are that (1) the terms of the security instrument executed by Plaintiff grant a power of sale to Defendant MERS as nominee to the Lender, (2) Plaintiff agreed to appoint an attorney-in-fact to exercise the power of sale if he defaulted on the loan, and (3) Defendant MERS assigned Plaintiff's indebtedness and all its powers under the security instrument to Defendant U.S. Bank before the date of the foreclosure sale, see [Doc. 26-1, at 14] and [Doc. 41-4].

not special damages." <u>See</u> <u>Jamison v. First Ga. Bank</u>, 193 Ga. App. 219, 223-24, 387 S.E.2d 375 (1989). Plaintiff also claims that he has "been unable to work," [Doc. 32, at 24], as a result of the pending foreclosure, but provides no facts that would allow the court to draw such an inference.

Because Plaintiff has not sufficiently pleaded a slander of title claim under both the Federal Rules of Civil Procedure and Georgia law, the Court **RECOMMENDS** that Defendants' motion to dismiss Claim Six of Plaintiff's amended complaint be **GRANTED**.

### 7. Plaintiff's Seventh Claim: Libel

Similar to the previous slander of title claim, Plaintiff alleges in Claim Seven that Defendants U.S. Bank and McCurdy libeled him. Plaintiff relies on the same set of facts in support of this claim, namely the statements published in the Daily Report, the foreclosure notifications, and the fact that Plaintiff sent Defendant McCurdy a "Notification of Dispute letter." [Doc. 32 ¶¶ 73-76].

Under Georgia law, libel is "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a); <u>see</u> <u>also</u> <u>Hoffman-Pugh v. Ramsey</u>, 312 F.3d 1222, 1225 (11th Cir. 2002). If a libel claim "consists of a charge that one is guilty of a crime,

28

dishonesty, or immorality," and the words are defamatory on their face, then the claim is known as libel <u>per</u> <u>se</u> and damages are presumed. <u>Ramsey</u>, 312 at 1225 (citing <u>Zarach v. Atlanta Claims Ass'n</u>, 231 Ga. App 685, 688, 500 S.E.2d 1 (1998)).

Damages are not presumed, however, in libel claims based on other alleged defamations. Thus, a plaintiff alleging a libel claim not based on subject matter constituting libel <u>per</u> <u>se</u> must plead and prove special damages to prevail. <u>Zarach</u>, 500 S.E.2d at 5. Examples of special damages include loss of employment, income, or profits, and, under Federal Rule 9(g), they must be pled with particularity. <u>See</u> <u>Zarach</u>, 500 S.E.2d at 4; Fed. R. Civ. P. 9(g). Here, Plaintiff has not alleged facts that would constitute libel <u>per</u> <u>se</u>. <u>Garner v. Academy Collection Service, Inc.</u>, No. 3:04-CV-93-JTC, 2005 WL 643680, at *4 (stating that a charge of owing or failing to pay a debt does not amount to a charge that one is guilty of a crime, dishonesty or immorality) (citations omitted). Thus, to state a claim for libel Plaintiff must plead special damages with particularity.

First, Plaintiff's claim fails as a matter of law because he has not shown how he suffered special damages due to the publication of the foreclosure sale notices on the Daily Report Website. Instead, Plaintiff alleges in a conclusory manner that the pending foreclosure has harmed his reputation, caused an inability to work,

29

and subjected him to public embarrassment and ridicule.  [Doc. 32 ¶ 76].  For this reason alone, Plaintiff's libel claim fails because he has not pled any facts whatsoever, much less with particularity, on the issue of special damages. See Twombly, 550 U.S. at 555; Garner, 2005 WL 643680, at *4-5.

Even if Plaintiff had alleged special damages with particularity, his libel claim would still fail as a matter of law. As previously discussed, Plaintiff fails to show how the statements published in the Daily Report were false or malicious, or even defamatory. Defendant U.S. Bank was assigned Plaintiff's Security Deed and the accompanying power of sale before the foreclosure sale was scheduled to take place — all in accordance with Georgia statutory law.  Moreover, Plaintiff has never alleged that he made all payments under the Note or Security Deed, instead clinging to the untenable theory, repeated ad nauseum in multiple counts, that the fact that U.S. Bank did not hold the assignment until several days before the scheduled foreclosure date, the entire mortgage obligation is a nullity and void, relieving him of any obligation to pay his lender.

Because Plaintiff has not sufficiently pled a claim for libel, the Court **RECOMMENDS** that Defendants' motion to dismiss Claim Seven of Plaintiff's amended complaint be **GRANTED**.

**8.  Plaintiff's Eighth Claim: Civil Conspiracy**

Plaintiff also alleges that Defendants MERS, McCurdy, U.S. Bank, and Countrywide (a non-party to this action) conspired together in a "civil conspiracy." [Doc. 32 ¶ 80].  Plaintiff alleges that these parties conspired to collect "an unlawful debt" from Plaintiff through the use of "fraud, intentional nondisclosure, material misrepresentation, slander, and libel." [Id. ¶ 81].  He further avers that Defendants have used mail fraud, wire fraud, and banking fraud to achieve their goal of obtaining "a lump sum of $306,000 and/or a stream of monthly payments" from Plaintiff. [Id. ¶¶ 85-90].  Plaintiff cites once again to the Daily Report website postings and a July 3, 2009, "debt collection letter," as the acts showing a conspiracy existed.   In making his civil conspiracy allegations, Plaintiff alludes to the federal RICO statute, 18 U.S.C. § 1962(d), but does not expressly set forth a claim under that statute.  See [Id. ¶¶ 85-90].

A conspiracy exists when "two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design." Parrish v. Jackson W. Jones, P.C. et al., 278 Ga. App. 645, 629 S.E.2d 468, 472 (Ga. App. 2006). "The essential element of conspiracy is the charge of a common design." Id.  Further, "[t]here can be no conspiracy without a purpose, express or implied, to do something unlawful,

31

oppressive, or immoral...." <u>R. R. R. Ltd. P'ship v. Investguard, Ltd. et al.</u>, 219 Ga. App. 34, 463 S.E.2d 735, 736 (Ga. App. 1995).

Here, Plaintiff's allegations are vague and woefully lacking in factual content sufficient to state a plausible conspiracy claim. Plaintiff offers conclusory statements such as "[t]he fraudulent July 3, 2009 'Debt Collection Letter'... constitutes mail fraud" and "the fraudulent statements ... posted to the Daily Report Website ... constitute wire fraud." <u>See</u> [Doc. 32 ¶¶ 84-88]. Plaintiff has not offered any facts explaining how the letter or Daily Report statements constituted criminal fraud, nor has he shown how either are indicative of an agreement among Defendants to achieve an unlawful design. Absent a showing of either an agreement or an underlying wrongdoing there can be no conspiracy.[8] <u>Bolinger v. First Multiple Listing Service, Inc.</u>, No. 2:10-CV-211-RWS, 2012 WL 137883, at *25 (N.D. Ga. Jan. 18, 2012); <u>Miller v. Lomax</u>, 266 Ga. App. 93, 596 S.E.2d 232, 242 (Ga. App. 2004). Because Plaintiff has pled nothing more than conclusory statements and insufficient factual content in support of his claim, he falls far short of plausibly suggesting that Defendants engaged in a conspiracy to

---

[8]   Plaintiff's claims for fraud, wrongful foreclosure, and libel, which are based on the same facts as Plaintiff's conspiracy claim, all fail for a multitude of reasons, as previously discussed, and cannot be indicative of any underlying wrongdoing.

AO 72A
(Rev.8/82)

commit fraud or any other wrongdoing.[9]   See Iqbal, 129 S.Ct. at 1950-51.  Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Claim Eight of Plaintiff's amended complaint be **GRANTED**.

### 9.   **Plaintiff's Claim Nine[10]: Attempted Wrongful Foreclosure**

In his attempted wrongful foreclosure claim against Defendants McCurdy, MERS, and non-party Countrywide, Plaintiff claims that a July 3, 2009, notice letter mailed to him constituted a wrongful attempt to foreclose on the subject property. [Doc. 32, ¶ 93]; see also [Doc. 41-5].  Specifically, Plaintiff alleges that Defendants violated O.C.G.A. § 44-14-162.2 by listing "Jill Balentine of Countrywide Home Loans ... as the entity who has full authority to discuss, negotiate or change all terms of mortgage" when neither Defendant McCurdy nor non-party Countrywide were the owner of Plaintiff's mortgage. [Id. ¶ 96, 97].  Plaintiff also appears to

---

[9]  Any purported claim under the RICO statute fails for similar reasons.  Under § 1962(d), a plaintiff must allege that Defendants either agreed to the overall objective of the conspiracy or committed two predicate acts.  American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1293 (11th Cir. 2010) (citations omitted).  Plaintiff has failed to plead facts sufficient to show either.  Moreover, Civil RICO claims must be pled with an increased level of specificity under Rule 9(b), see id. at 1291, which, as discussed, Plaintiff has also failed to do.  Finally, Plaintiff alleges only that the Defendants have conspired to collect a debt from him, and RICO targets criminal conduct of a continuing nature.  See Jackson v. Bellsouth Tel., 372 F.3d 1250, 1264 (11th Cir. 2004).

[10]  Plaintiff's claim is mislabeled as Claim Ten in his amended complaint.

AO 72A
(Rev.8/82)

allege that Defendant MERS breached a duty owed to him because MERS did not have the authority to assign any power to non-party Countrywide that would have given it the power to discuss, negotiate, or change the terms of Plaintiff's mortgage.  [Id. ¶¶ 100-101.3]

To show wrongful attempted foreclosure in Georgia, a plaintiff must establish "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication." Aetna Finance Co. v. Culpepper, 171 Ga. App. 315, 319, 320 S.E.2d 228 (1984).  Here, Plaintiff does not allege that the July 3, 2009 "Initial Communication Letter" was published; rather, he states it was mailed to him. [Doc. 32, at 31].  As Defendants correctly argue, a "letter addressed to the person libeled does not constitute a publication" for purposes of making out an attempted foreclosure claim. [Doc. 41-1, at 23]; see also O.C.G.A. § 51-5-1(b); Nida v. Echols, 31 F.Supp. 2d 1358, 1374 (1998).

Furthermore, the letter informed Plaintiff that Countrywide Home Loans was the mortgage servicer to contact, which, like the June 4, 2010, letter sent a year later, complied with the Georgia statutory notice requirements previously discussed. See [Doc. 41-5]; O.C.G.A. § 44-14-162.2.  Ironically, Plaintiff concedes this

34

fact because, after receiving the July 3, 2009, letter, he "spoke with Countrywide representative who gave [him] updates ... and were able to postpone foreclosure based on negotiations...." See [Doc. 32, ¶ 89]. Additionally, Plaintiff fails to show how the statement he alleges is false - that Countrywide had the authority to discuss and modify Plaintiff's mortgage - concerns his financial condition in any way. Finally, Plaintiff provides no facts whatsoever that would establish how the July 3, 2009, letter directly caused any damages. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's ninth claim be **GRANTED.**

### III.
### Plaintiff's Motion to Amend the Amended Complaint

On May 4, 2011, after Defendants filed their motions to dismiss the instant action, Plaintiff filed a "Second Motion to Amend Complaint" with a memorandum in support. [Doc. 56]. The memorandum recites boilerplate legal authority relating to amendment of complaints but makes no specific arguments as to how, why, or in what respect the complaint should be amended. Moreover, the motion does not attach a copy of any proposed amendments. Instead, Plaintiff's memorandum makes arguments in opposition to Defendants' motions to dismiss. See [Doc. 56, at 8-36]. In other words, Plaintiff's memorandum is insufficient to properly support the motion seeking leave to amend the amended complaint. See Fed. R.

Civ. P. 7(b)(1) (requiring motions to state with particularity the grounds for the relief sought); <u>Rosenberg v. Gould</u>, 554 F.3d 962, 967 (11th Cir. 2009) (noting trial court's discretion in denying a motion to amend for party's failure to comply with Rule 7(b)); <u>Carruthers v. BSA Adver., Inc.</u>, 357 F.3d 1213, 1217-18 (11th Cir. 2004) (affirming denial of motion to amend where plaintiff provided no explanation as to why the interests of justice required leave to amend); <u>Doe v. Pryor</u>, 344 F.3d 1282, 1288 (11th Cir. 2003) (stating that a motion requesting leave to amend must "set forth the substance of the proposed amendment or attach a copy of the proposed amendment" (citing <u>Long v. Satz</u>, 181 F.3d 1275, 1279-80, (11th Cir. 1999))).   In fact, the argument in Plaintiff's memorandum is virtually identical to the argument in Plaintiff's later-filed response in opposition to Defendants' motions to dismiss. <u>Compare</u> [Doc. 56, at 9-22] <u>with</u> [Doc. 60, at 3-21].   Without a memorandum stating how and why leave to amend should be granted, and without a proposed amendment showing what the amendment would be, the motion must be **DENIED**.

### IV.
### Plaintiff's Motion for Rule 11 Sanctions

Plaintiff filed a motion for Rule 11 sanctions on May 4, 2011. [Doc. 57].   Although ambiguous, Plaintiff appears to argue that sanctions should be imposed either on all Defendants or only on

AO 72A
(Rev.8/82)

Defendant U.S. Bank on account of legal arguments made in their first motion to dismiss. See [Doc. 57, at 7, 10-11]. The arguments set forth in Plaintiff's motion fall far short of that required by the Federal Rules for the Court to consider imposing sanctions on Defendants. Accordingly, Plaintiff's motion for Rule 11 sanctions is hereby **DENIED**.

Plaintiff's motion centers around Defendants' previous legal strategy of arguing that Plaintiff's claims against Defendant U.S. should be barred on res judicata grounds. See [Docs. 11-1, at 11-15; 57, at 7]. Because this Court rejected Defendants' argument that U.S. Bank was a party to <u>Kante I</u> in its January 27, 2011, Report and Recommendation, Plaintiff argues that Defendants' legal strategy was clearly "calculated and unethical and Defendants should be sanctioned." [Doc. 57, at 7]. The Court does not agree.

As an initial matter, Federal Rule of Civil Procedure 11(c)(2) states that a motion for sanctions under Rule 11 "must be served under Rule 5, but it must not be filed or presented to the court if the challenged ... defense ... is withdrawn or appropriately corrected within 21 days after service." Plaintiff admits that he did not serve Defendants and "apologizes to the Court and to Defendants for failing to serve this motion for sanctions 21 days prior to service." [Doc. 65, at 2]. For this reason alone, Plaintiff's motion should be denied.

AO 72A
(Rev.8/82)

Plaintiff, however, attempted to serve a second motion for Rule 11 sanctions on Defendants as an exhibit attached to his reply brief in support of the instant sanctions motion. [Doc. 65, at 2]. Plaintiff states that he did this "to give [Defendants] another opportunity to withdraw or correct their statement" before Plaintiff re-files the motion. [Doc. 65, at 2]. Defendants opted not to withdraw or correct any previous arguments made to the Court, and Plaintiff did not subsequently file his second motion for sanctions after 21 days. Thus, because Plaintiff never re-filed his *second* motion for Rule 11 sanctions, Plaintiff has abandoned the motion all together. But, even if not abandoned, the motion fails regardless because Plaintiff did not comply with the service requirements of Rule 11(c)(2) when filing the original motion for Rule 11 sanctions.

Procedural failings aside, Plaintiff's substantive arguments as to why Defendants should be sanctioned are frivolous. The Court may impose sanctions only when a party files a pleading that has no factual or legal basis, or is filed in bad faith. <u>See</u> Fed. R. Civ. P. 11(b); <u>Massengale v. Ray</u>, 267 F.3d, 1298, 1301 (11th Cir. 2001). As Defendants' point out in their response, the res judicata argument relied in part on statements contained in an order issued by District Judge Carnes on July 2, 2010, suggesting that U.S. Bank was *actually* a party to <u>Kante I</u>. <u>See</u> [Doc. 61, at 5]; [Doc. 5, at

1 n.1].  Thus, Defendants clearly had a reasonable basis in both law and fact to assert an argument based on res judicata grounds.

For these reasons, Plaintiff's motion for Rule 11 sanctions, [Doc. 57], is **DENIED**.

**V.**
**Conclusion**

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motions to dismiss, [Docs. 39, 41], be **GRANTED**.  Plaintiff's motion to amend his amended complaint, [Doc. 56], and Plaintiff's motion for Rule 11 sanctions, [Doc. 57], are hereby **DENIED.**

In light of the foregoing, the Court **FURTHER RECOMMENDS** that Plaintiff's motions for temporary restraining orders, [Docs. 85, 86] be **DENIED as MOOT**, and that Plaintiff's motion to set aside forfeiture, [Doc. 90], be **DENIED as MOOT.**

Additionally, The Clerk is **DIRECTED** to **STRIKE** [Doc. 49] from the record, leaving [Doc. 60] as the sole response to [Doc. 41]. The Clerk is also **DIRECTED** to correct the Court's error at [Doc. 58] to show that the extension of time is for Plaintiff to respond to [Doc. 48], rather than [Doc. 38].

**SO ORDERED, REPORTED AND RECOMMENDED** this 31st day of January, 2012.

s/ *E. Clayton Scofield*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)